Lawrence V. HARDESTY, Sr., Plaintiff

v.

AMERICAN SEATING CO., Defendant

No. CIV.A. AMD 01–1130.

United States District Court,
D. Maryland.

April 10, 2002.

Charles G. Bernstein, Bernstein and Sakellaris, Baltimore, MD, for plaintiff.

Brian S. Goodman, Fedder and Garten, PA, Baltimore, MD, for American Seating Co., defendant.

Michael Loyola Rowan, Quinn McAuliffe Rowan & McLindon, Rockville, MD, for Lankfer Diversified Industries, Inc., defendant.

## MEMORANDUM

DAVIS, District Judge.

Before the Court in this diversity personal injury damages action are the parties' cross motions for summary judgment. Defendant's motion includes a challenge to the qualifications of Plaintiff's expert witness on liability and the reliability of the expert's methodology to render the causation opinion he renders. An oral hearing has been conducted and counsel have filed supplemental letter memoranda. Plaintiff was invited to have his expert testify by video conference to allay the court's concerns as to the reliability of the expert's opinions, but Plaintiff has declined that opportunity. For the reasons set forth herein, Plaintiff's motion for summary judgment shall be denied and Defendant's motion will be granted.

## I. BACKGROUND

The material facts, viewed in the light most favorable to Plaintiff, are as follows. Plaintiff is an experienced, over-the-road, tractor-trailer truck driver. On or about August 24, 1998, at Defendant's plant located in Grand Rapids, Michigan, Plaintiff picked up a load of stadium seating equipment which was to be installed in a National Football League arena then under construction in Baltimore. The equipment, consisting of seat backs and other parts, had been packed in large corrugated cardboard boxes. Each box weighed several hundred pounds.

Defendant's employees loaded the boxes into the trailer, using fork lift machines.

The loading process took less than an hour. Plaintiff was present on the scene when his trailer was loaded; however, he remained in the cab of his truck, doing "paper work" and perhaps napping, during the loading process. The boxes containing the seating equipment were stacked two or three high onto wooden pallets, and then such a two- or three-box "pallet-load" would be stacked atop another "pallet-load." (A photograph of a part of the load taken after Plaintiff's arrival in Baltimore (i.e., immediately after the incident in which Plaintiff was injured) shows considerable open space between the roof of the trailer and the top of the cargo, on the one hand, and between the rear door of the trailer and the back end of the cargo, on the other hand.)

When the trailer had been fully loaded, Plaintiff visually examined the portion of the load that could be observed from ground level at the rear of the trailer. Truckers and shippers employ so-called "load bars" to secure freight such as that at issue in this case. Load bars are expandable metal bracing mechanisms which, when properly installed in a trailer that is properly loaded, secure the cargo *in situ*, thereby retard movement of the cargo during transit, and thus enhance safety. Plaintiff climbed into the rear of his trailer after one of Defendant's employees had installed the load bars in his trailer to check that the installation of the load bars was proper and adequate. Plaintiff checked the load bars and found them secure. Plaintiff then sealed the load, and the trailer was not opened until the cargo arrived in Baltimore a day or so later.

Plaintiff accepted the freight "S.L.C." "S.L.C." means "shipper's load and count." It is a term that is commonly seen in the adjudication of claims among shippers, carriers and consignees for damage to freight, *see generally Dublin Co. v. Ryder Truck*

*Lines, Inc.*, 417 F.2d 777 (5th Cir.1969), and it serves as a legal device to shift the burden of proof in such litigation. *See generally Automated Donut Systems, Inc. v. Consolidated Rail Corp.*, 12 Mass.App. Ct. 326, 424 N.E.2d 265 (1981); *see also Marjan Int'l Corp. v. V.K. Putnam, Inc.*, 1993 WL 541204, *15, n. 2 (S.D.N.Y. Dec.28, 1993) ("The legend 'SLC' refers to 'shipper's load and count' and indicates that the shipper, but not the carrier, attests to the accuracy of the quantity of goods loaded on board the carrier's vehicle."). Plaintiff contends that the shipping of the stadium seats "S.L.C." relieved him of any "duty to observe the loading" of his trailer. *See* March 21, 2002, Letter Memorandum of Plaintiff at 4 (quoting testimony of Plaintiff's expert witness).

Plaintiff drove the load to Baltimore. When Plaintiff arrived at his Baltimore destination, he opened the rear doors of his trailer. When Plaintiff did so, one or two of the boxes at the end of the trailer fell out of the trailer and injured Plaintiff. Accordingly, Plaintiff brought this claim for damages under Maryland law. Jurisdiction is based on diversity of citizenship.

Plaintiff conceded at the hearing that without the testimony of his expert witness as to causation (set forth below), he cannot prevail in this action.

## II. ANALYSIS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to summary judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when

applied to the substantive law, it affects the outcome of litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering the motion, the court assumes that all of the non-moving party's evidence is worthy of belief and justifiable inferences are drawn in favor of the non-moving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the non-moving party fails to establish the existence of an essential element of its case, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp.* 477 U.S. at 322, 106 S.Ct. 2548. If the movant demonstrates there is no genuine issue of material fact and that she is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. *Id.* at 324, 106 S.Ct. 2548. The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. Instead, the evidentiary materials must show facts from which the finder of fact could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Under Maryland tort law, a negligence claim requires a showing of the following four elements: "(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3) a legally cognizable causal relationship between the breach of duty and the harm suffered; and (4) damages suffered by the plaintiff." *Yousef v. Trustbank Savings, F.S.B.,* 81 Md.App. 527, 535–36, 568 A.2d 1134 (1990), citing *Jacques v. First Nat'l Bank of Maryland,* 307 Md. 527, 531, 515 A.2d 756 (1986). Although the question "whether there is adequate proof of the required elements needed to succeed in a negligence action is [generally] a question of fact to be determined by the fact finder, *... the existence of a legal duty is a question of law to be decided by the court."* *Valentine v. On Target, Inc.,* 353 Md. 544, 549, 727 A.2d 947 (1999)(emphasis added); *Rosenblatt v. Exxon,* 335 Md. 58, 76, 642 A.2d 180 (1994)(same). Contributory negligence, "that degree of reasonable and ordinary care that a plaintiff fails to undertake in the face of an appreciable risk which cooperates with the defendant's negligence in bringing about the plaintiff's harm," *Bd. of County Comm'rs of Garrett County v. Bell Atlantic–Maryland, Inc.,* 346 Md. 160, 180, 695 A.2d 171 (1997), is a complete bar to recovery. *Id.*

Defendant argues, *inter alia,* that (1) the summary judgment record establishes that Plaintiff was contributorily negligent as a matter of law, and that (2) because Plaintiff's expert opinion testimony as to causation was not reliably derived as required by Fed.R.Evid. 702, it is inadmissible. I agree with Defendant.

First, to the extent Plaintiff contends that he was not contributorily negligent because the law imposed no duty upon him to exercise reasonable care for his own safety, other than a duty to avoid "open and patent" dangers, or because his load was shipped "S.L.C.," *see, inter alia,* Plaintiff's March 21, 2002, Letter Memorandum at 2 ("Thus, the defendant's reliance upon [Code of Federal Regulations provisions setting forth the duty of due care owed by a motor carrier/truck driver such as Plaintiff] is a red herring ... [because] to the extent the [duty of due

care imposed on Plaintiff is] not trumped by 'S.L.C.' except as to open and patent dangers, [it] has been complied with . . . ."), the court rejects such a contention.

■ To the contrary, as a matter of law, Plaintiff had a duty under Maryland law (and, as a federally-licensed common carrier, under federal law) to exercise reasonable care for his own safety, in conformity with commonsense federal regulations requiring that before starting on his journey he "[a]ssure himself . . . that the . . . commercial motor vehicle's cargo is properly distributed and adequately secured." *See* 49 C.F.R. 392.9 (1994). He failed to conform to these requirements and thereby failed to conform to the requirements of Maryland law. *Id.* "Undoubtedly, the safety regulations at issue also impose obligations not only upon carriers but upon drivers themselves." *Johnson v. S.O.S. Transport, Inc.*, 926 F.2d 516, 524 (6th Cir.1991); *and see Franklin Stainless Corp. v. Marlo Transport Corp.*, 748 F.2d 865, 869 n. 4 (4th Cir.1984) (quoting with approval jury instruction as follows: "You are told that [the driver] did not comply with these regulations, and you are told further that that is negligence."). Notwithstanding Plaintiff's expert's equivocation on this issue, neither the alleged "practice in the industry" nor the "S.L.C." endorsement on the bill of lading excused Plaintiff from the duty to exercise reasonable care for his own safety. Although a different circumstance is presented where a driver accepts a *sealed load, see, e.g., General Electric Co. v. Moretz*, 270 F.2d 780 (4th Cir.1959), there is no dispute in this case that Plaintiff himself sealed the trailer. Thus, his transportation of the cargo at issue here is plainly covered by the federal regulations. Surely, Maryland common law would impose no lesser duty.

■ Accordingly, Plaintiff's decision to ignore the loading process by remaining in his truck, oblivious to the manner and means of Defendant's loading of the trailer, coupled with his own failure to examine the load bars sufficiently to confirm that they would "adequately secure" the cargo, together with his decision, in the face of his prior omissions, to open the doors of the trailer upon his arrival in Baltimore while standing within the zone of danger created by the possibility (of which he negligently failed to inform himself) of injury from cargo falling out of the trailer, cohered to rise to the level of a cognizable breach of duty—contributory negligence. Moreover, the very same mechanism of proximate cause, whatever it might have been, that would otherwise have justified the imposition of liability upon Defendant for *its* negligence (if any) would likewise inexorably raise the bar of contributory negligence against Plaintiff. Consequently, if *Defendant* were indeed negligent and if its negligence was a proximate cause of Plaintiff's injuries, then, as a matter of law, the very same must be true as to the *Plaintiff's* acts and omissions. Defendant is therefore entitled to judgment as a matter of law.

■ Second, I am constrained to agree with Defendant that, even assuming Plaintiff's expert is qualified by experience to render opinions relevant to the trucking industry, the witness's causation testimony does not pass muster under Rule 702. *See generally Shreve v. Sears, Roebuck & Co.*, 166 F.Supp.2d 378 (D.Md.2001). On the basis of three poor quality photographs taken immediately after the accident and several alleged calculations of "crush factors" and the like in respect to the cardboard packaging materials containing the seating equipment, the witness has essentially wandered into a metaphysical extrapolation as to how and why the load bars became dislodged and why the boxes of seating components managed to be in a position such that, when the doors were opened in Baltimore, one or two of the boxes fell out of the trailer.

■ To be sure, the witness's reasoning and chain of inferences leading to his causation conclusion may be minimally *plausible.* Nevertheless, the proffered opinion—that the corrugated packaging containing the seating equipment was too weak to support their contents and/or similar boxes resting atop them, that the lower boxes on the "pallet-loads" were crushed by the allegedly heavier boxes stacked on top of them, thereby causing the heavier boxes to tumble off the "pallet-loads" and thereby cause the load bars to be dislodged, and thus become ineffective, thereby allowing one or two boxes to fall out of the truck when the doors were opened—has not been shown to be based on "sufficient facts or data," Fed.R.Evid. 702(1), that are "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," Fed.R.Evid. 703, and thus, Plaintiff has not demonstrated that the expert testimony on causation "is the product of reliable principles and methods." Fed.R.Evid. 702(2). Contrary to Plaintiff's assertion, Defendant need not show that Plaintiff's expert opinion testimony is "bizarre" in order to challenge its admissibility. *See* Plaintiff's April 2, 2002, Letter Memorandum at 1. Rather, Defendant need only raise an unanswered question as to the *reliability* of the methods employed to derive such testimony. Defendant has done so here.

### III. CONCLUSION

As a matter of law, Plaintiff's claim is barred by his own contributory negligence. Moreover, in view of the manifest unreliability of the Plaintiff's expert opinion testimony that inadequate packaging material was a proximate cause of the unintended escape of the trailer contents which injured plaintiff, that testimony is excluded. That evidence having been excluded as inadmissible under Fed.R.Evid. 702, Plaintiff, as he conceded at the hearing, cannot establish an element of his negligence claim. Accordingly, Plaintiff's motion for summary judgment shall be denied and Defendant's motion for summary judgment shall be granted. A separate order follows.

### ORDER

In accordance with the foregoing Memorandum, it is this 10th day of April, 2002, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED and JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF;

2. That this action is hereby CLOSED; and

3. That the Clerk shall transmit copies of the foregoing memorandum and this order to all counsel.